UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMARA A. JONES,

    Plaintiff,

v.
                                              Case No. 1:09-cv-736
                                              Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                                        /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision that her disability has ceased and that she was no longer entitled to Supplemental Security Income (SSI) under the Social Security Act.

Plaintiff was born on March 15, 1967 and completed the 10th grade (AR 226, 552).[1] In a decision dated April 28, 1999, the Commissioner of the Social Security Administration (Commissioner) found that plaintiff was disabled as of April 2, 1998 and determined that she was eligible for SSI (AR 158). Plaintiff had severe impairments of disabling panic attacks, schizophrenia and depression (AR 157). After performing a disability review on June 27, 2006, the Commissioner found that plaintiff was no longer disabled as of June 1, 2006 (AR 151). The determination was upheld on reconsideration and an administrative hearing was held on February 17, 2009 (AR 547). At the hearing, plaintiff testified that the sarcoidosis was the "main reason" she could not work, with the "second reason" being her lack of energy from the illness (AR 560-61). An Administrative Law

---

[1] Citations to the administrative record will be referenced as (AR "page #").

Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision on March 4, 2009, in which he determined that plaintiff's disability ended on June 1, 2006 and that she had not become disabled again since that date (AR 13-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner may terminate SSI benefits if a review reveals substantial evidence that the recipient's condition has improved in a manner relevant to the recipient's ability to work, and that the recipient can now engage in substantial gainful activity. 42 U.S.C. § 1382c(a)(4)(i).[2] The Commissioner employs a seven step sequential evaluation for a continuing disability review which

---

[2] 42 U.S.C. § 1382c(a)(4)(A)(i) provides in pertinent part as follows:

A recipient of benefits based on disability under this subchapter may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by--

(A) in the case of an individual who is age 18 or older--

(i) substantial evidence which demonstrates that--

    (I) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

    (II) the individual is now able to engage in substantial gainful activity . . .

42 U.S.C.A. § 1382c

differs from the five step sequential evaluation used to determine if a claimant is disabled in the first instance. *See* 20 C.F.R. § 416.994(b)(5) [3]

The seven steps set forth in § 416.994(b)(5) are summarized as follows:

(i) Step 1. Do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of subpart P of part 404 of this chapter? . . .

(ii) Step 2. If you do not, has there been medical improvement as defined in paragraph (b)(1)(i) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step 3 in paragraph (b)(5)(iii) of this section. . . . [4]

(iii) Step 3. If there has been medical improvement, we must determine whether it is related to your ability to do work . . . i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step 4 in paragraph (b)(5)(iv) of this section. If medical improvement is related to your ability to do work, see step 5 in paragraph (b)(5)(v) of this section.

(iv) Step 4. If we found at step 2 . . . that there has been no medical improvement or if we found at step 3 . . . that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (b)(3) and (b)(4) of this section apply. If none of them apply, your disability will be found to continue . . .

---

[3] This regulation provides in pertinent part as follows:

"To assure that disability reviews are carried out in a uniform manner, that a decision of continuing disability can be made in the most expeditious and administratively efficient way, and that any decisions to stop disability benefits are made objectively, neutrally, and are fully documented, we will follow specific steps in reviewing the question of whether your disability continues. Our review may cease and benefits may be continued at any point if we determine there is sufficient evidence to find that you are still unable to engage in substantial gainful activity."

[4] Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(i). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.*

(v) Step 5. If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 416.921). This determination will consider all your current impairments and the impact of the combination of these impairments on your ability to function. If the residual functional capacity assessment in step 3 . . . shows significant limitation of your ability to do basic work activities, see step 6 . . . When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(vi) Step 6. If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 416.960. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(vii) Step 7. If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education, and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 416.994(b)(5).

## II. ALJ'S DECISION

The ALJ made the following preliminary determinations. The most recent decision finding that plaintiff was disabled was the April 28, 1999 decision, which is known as the "comparative point decision" or CPD (AR 14). At the time of the CPD, plaintiff had the following medically determinable impairments: panic attacks, schizophrenia and depression. (AR 15). These impairments were found to result in the inability to relate to coworkers, deal with the public, use judgment, deal with work stresses, function independently, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability (AR 15). In addition, the medical evidence established that as of June 1, 2006, plaintiff suffered from severe impairments of

5

sarcoidosis and anxiety, which the ALJ determined to be plaintiff's current severe impairments (AR 15).

At Step one, the ALJ determined that since June 1, 2006, plaintiff had not had an impairment which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(AR 16).[5] At Step two, the ALJ determined that medical improvement, 20 C.F.R. 416.994(b)(1)(i), occurred as of June 1, 2006 (AR 16). Specifically, there had been a decrease in medical severity of the impairments present at the time of the CPD (AR 16). The ALJ determined at Step three that plaintiff's medical improvement was related to her ability to work, because it resulted in an increase in her residual functional capacity (RFC) (AR 17). Specifically,

> As of June 1, 2006, and continuing, the impairments present at the time of the CPD had decreased in medical severity to the point where the claimant has the residual functional capacity to perform work at the light exertional level, as it is defined in the Dictionary of Occupational Titles: lifting up to 20 pounds on occasion and 10 pounds on a frequent basis; stand and/or walk a cumulative total of 6 hours in an 8-hour workday; sit at least 2 hours in an 8-hour work day; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolding; frequently perform postural maneuvers; and must avoid concentrated exposures to extremes of cold, fumes, odors, dust, gases and areas of poor ventilation. She is limited to the performance of simple, routine and repetitive tasks.

(AR 17).

Step four was inapplicable (i.e., the ALJ had determined at Step two that plaintiff had medical improvement and at Step three that the medical improvement was related to her ability to work). At Step five the ALJ determined that plaintiff suffered from current severe impairments of

---

[5] The court notes that while the ALJ applied the seven-step sequential evaluation, his decision did not clearly designate each step of the evaluation. However, because the court located each of the steps in the ALJ's decision, a remand for this reason would serve no purpose. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

sarcoidosis and anxiety and that plaintiff's RFC indicated a significant limitation in her ability to do basic work activities (AR 16-17). At Step six, the ALJ determined that plaintiff had no past relevant work (AR 19). Finally, at Step seven, the ALJ determined that "[b]eginning on June 1, 2006, considering the claimant's age, education, work experience and residual functional capacity based on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy" (AR 19). Based upon the testimony a vocational expert, the ALJ found that plaintiff could perform requirements of the following occupations in Michigan: production sorter (2,400 jobs); assembler (8,000 jobs); dishwasher (4,200 jobs); and file clerk (4,600 jobs) (AR 20). The ALJ concluded that plaintiff's disability ended on June 1, 2006 and that she has not become disabled again since that date (AR 20).

## III. ANALYSIS

Plaintiff raises two issues on appeal:

**A.    The ALJ committed reversible error by concluding that defendant met its burden of proof to prove medical improvement had occurred in this case.**

Plaintiff did not address the "medical improvement" issue, other than to cite two cases and state that "[t]hose cases, when viewed in light of the Record of this case, clearly demonstrate that the ALJ's Decision is in error." Plaintiff's Brief at 11. Plaintiff's failure to develop this issue amounts to a waiver of the issue on appeal. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (a court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments).

7

Even if the court were to consider the proposition advanced by plaintiff, the record supports the ALJ's finding of medical improvement in her original disabling condition. Plaintiff was awarded SSI because she suffered from non-exertional, mental limitations (i.e., disabling panic attacks, schizophrenia and depression) (AR 157). While plaintiff still has panic attacks, this condition does not appear to be disabling (i.e., she takes her medicine, keeps to herself and is "kind of like calm") (AR 560, 564). Rather, plaintiff testified that she cannot work due to limitations from the sarcoidosis (i.e., shortness of breath, fatigue, lack of energy and the inability to work every day without getting fired for taking too many sick days) (AR 558-62). In short, plaintiff did not identify her mental impairments as work-preclusive.

At the time the ALJ issued his decision in March 2009, he observed that plaintiff had not received formal mental health treatment in 10 years (AR 16). In reaching his determination regarding medical improvement, the ALJ relied upon the March 28, 2006 consultative examination of David Berghuis, M.A., L.L.P. and Arthur Jongsma, Ph.D. (AR 305). Berghuis and Jongsma noted that in a previous evaluation, a psychologist indicated concern over schizophrenia based upon plaintiff's "vague description of seeing shadows" (AR 305). They also discussed "some psychological testing of questionable validity" (AR 305). After performing their own evaluation, Berghuis and Jongsma noted that "[t]he intensity of any visual hallucinations is somewhat questionable" and were concerned that plaintiff "was inappropriately inflating her actual experience of symptoms" (AR 305). They noted some level of paranoia and a certain level of distrust in the evaluator (AR 305). Based upon plaintiff's medical history and their own evaluation, Berghuis and Jongsma found that plaintiff suffered from a generalized anxiety disorder (AR 305). The ALJ also noted that plaintiff's primary care physician found in November 2006 that her general anxiety

8

disorder was stable, and prescribed Xanax on a per-as-needed basis (AR 17, 513).  Based on this medical evidence, the ALJ concluded that plaintiff suffered from a general anxiety disorder which had fewer limitations than the disabling mental conditions identified on her CPD.  Accordingly, substantial evidence supports the ALJ's determination that plaintiff had experienced medical improvement in her mental condition since her CPD.

> **B.    The ALJ committed reversible error by improperly rejecting the opinion of plaintiff's treating physician.**

At some undetermined point since the CPD, plaintiff began suffering from sarcoidosis, which she claims is disabling and prevents her from engaging in substantial gainful activity.  The ALJ addressed this new condition during the seven step sequential evaluation, but determined that even with the limitations posed by the sarcoidosis, plaintiff retained the RFC to perform 19,200 jobs in the regional economy.  Plaintiff contends that the ALJ should have adopted the opinions expressed by her primary care physician, Michael App, M.D., which supported plaintiff's claim that she remained disabled.

> **1.    Legal standard**

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating a Social Security claimant's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the

Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

### 2. Dr. App's opinions

On May 17, 2007, Dr. App wrote a letter to the agency and a community college stating: that plaintiff has a known history of sarcoidosis since August 2005; that since that time, plaintiff has had ongoing problems "making it difficult for her to carry out the needs of a full-time job, in particular, a job or jobs that would require excessive or moderate amounts of physical activity" (AR 521). The doctor was "optimistic that she is going to make an ongoing recovery," was "encouraged by her progress to date," and was "very pleased" with he ongoing multi-specialty evaluation to date (AR 521). The doctor asked that plaintiff's medical restrictions and limitations "be weighed in her favor" (AR 521).

A physician's assistant and Dr. App co-signed a "medical assessment of ability to do work-related activities" dated August 22, 2007. In this assessment, they opined that plaintiff suffered significant limitations from her sarcoidosis, which included fatigue and the need to take frequent breaks (AR 505). The doctor opined that in an 8-hour workday, plaintiff could only sit for

4 hours, stand for 1 to 2 hours, walk for 1/2 hour and could "sit/stand as needed" for 1 to 2 hours (AR 505). Plaintiff could occasionally lift or carry up to 10 pounds, and became exhausted lifting a laundry bag at home (AR 505). Plaintiff could never crouch, crawl or stoop (AR 506). In this regard, the doctor noted that plaintiff has had right knee pain, and that her steroid treatment for sarcoidosis caused weight gain and pain in both knees (AR 506). Plaintiff's balance was affected due to her easy fatigue (AR 507). Dr. Apps determined that plaintiff should avoid temperature extremes, chemicals, dust, fumes and humidity, specifically noting that "[f]umes, chemicals, smoke exacerbate her shortness of breath" (AR 507). The doctor also noted that plaintiff's past jobs as a factory worker and nurse aid involved repetitive movements and heavy lifting, respectively, both of which exacerbate her shortness of breath and fatigued (AR 508). Furthermore, plaintiff gets fatigued with even light activity (AR 508).

### 3. The ALJ's decision

The ALJ evaluated Dr. App's opinions as follows:

> I have evaluated a form and letter prepared by a physician's assistant and Dr. App, respectively. Exhibits B17F, B18F. The physician's assistant prepared a form that was purportedly co-signed by Dr. App. Exhibit B17F. The physician's assistant reported that she spent 20 minutes filling out the form with the patient. The claimant told her that her sarcoidosis was "o.k." She further reported that she gets significant fatigue with light activity. Id. Clearly, the responses were based upon the claimant's answers to the questions. Indeed, Dr. App reported in 2007 that the claimant's sarcoidosis was stable with no exacerbations. Id. Thus, the form procured by the representative is not probative.

> Dr. App prepared a letter for the Social Security Administration and for college purposes. Exhibit B18F. In May 2007, he said that is would be [sic] difficult for her to work on a full-time basis from the standpoint of sarcoidosis. Id.

> Firstly, this is an issue reserved to the Commissioner of the Social Security Administration. Secondly, this statement is inconsistent with Dr. App's office note prepared the following month. Exhibit B17F. He specifically stated in June 1007 that this condition was "stable" and there had been "no exacerbations." Id. Thirdly,

11

pulmonary function studies in June 2007 were entirely within normal limits. Exhibit B16F.

Therefore, for the preceding reasons, these opinions are appropriately discounted. However, I find Dr. App's and Dr. Sanman's narrative office records persuasive to the extent they are based upon objective findings and not the claimant's allegations.

(AR 18-19).[6]

### 4. Discussion

Plaintiff contends that the ALJ failed to give good reasons for discounting Dr App's opinions. While it appears that a physician's assistant prepared the August 22, 2007 assessment, the doctor's signature appears on the assessment, and the court will treat the assessment as coming from the doctor (AR 505-09). The ALJ reviewed the doctor's opinions and gave adequate reasons for discounting those opinions (AR 18-19). Under these circumstances, the ALJ met the requirement to articulate good reasons for not crediting the opinion of a treating source. *See Wilson*, 378 F.3d at 545.

### IV. Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.


Dated: August 17, 2010                /s/ Hugh W. Brenneman, Jr.
                                      HUGH W. BRENNEMAN, JR.
                                      United States Magistrate Judge

---

[6] In July 2005, Dr. Sandman, a pulmonologist, examined plaintiff for a probable diagnosis of sarcoidosis (AR 484-85). On July 26, 2005, the Dr. Sandman reported that "pulmonary function testing today shows a moderate restriction with a total lung capacity 57%" (AR 484).

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).